## The People vs. Almon D. Felton.

An indictment being found against C., he was, on the 6th of June, 1860, arraigned in the court of oyer and terminer, and pleaded not guilty. Bail was fixed at $700, and C. as principal and F. as surety were recognized for the appearance of C. at the next oyer and terminer, in October, to answer the indictment, by an entry made in the minutes of the court, which merely recited the arraignment of C. upon the indictment, and that he was ordered by the court to enter his recognizance in the sum of $700, and that thereupon C. was recognized in that sum as principal, and F. as surety. C. appeared at the oyer and terminer in October, when another indictment was found against him, and filed on the morning of the 10th of October, for the same offense charged in the previous indictment. On the afternoon of the same day a third indictment was found, C. was arraigned thereon, and pleaded not guilty, and on motion of the district attorney, an order was entered in the minutes, quashing the first two indictments. C. then departed from the court without its express permission. On the next day an order was entered, directing the recognizance of June 6, to be written out in full and attached to the minutes as of that date, and that the minutes and entry of such recognizance be corrected, &c. Thereupon another order was entered, directing such recognizance to be estreated, and prosecuted. The clerk, pursuant to the order, drew up from his minutes a recognizance, as of the 6th of June, and attached the same to the minutes kept by him at the June term, and also to the book of records, by pasting the same therein. In an action upon such recognizance; *Held,* 1. That the entry in the minutes of the court was defective in not stating the acknowledgment of indebtedness, and therefore no legal recognizance was entered into by C. and F.
2. That the entry being defective, there was no memorandum from which to make up a recognizance, and hence there was nothing on which to base the action.
3. That the court had not authority, *ex parte,* to manufacture an undertaking imposing obligations upon the accused and his surety never assumed by them.
4. That quashing the indictment which the accused had given bail to appear and answer, was a discharge of the obligation, released the surety, and authorized the prisoner's departure from court without special leave. Bockes, J. dissented.

THIS action was brought upon a recognizance claimed to have been entered into by the defendant as surety for one Andrew J. Curtis, to appear and answer an indictment. Upon the trial, it was established by the finding of the jury that an indictment was pending against said Curtis for aiding a prisoner to escape from states prison, and that on the 6th

day of June, 1860, he was arraigned in the court of oyer and terminer then being held in Clinton county, and pleaded not guilty; that bail was fixed at $700, and that said Curtis as principal, and said Felton as surety, were recognized for the appearance of the accused at the next oyer and terminer, by an entry made in the minutes of the court, in the words following :

"*The People* agst. *Andrew J. Curtis.* Defendant arraigned upon an indictment against him for aiding prisoners to escape from and break Clinton prison ; pleaded not guilty, and the court ordered the defendant to enter his recognizance in the sum of $700 for his appearance at the next court of oyer and terminer, to be held in and for the county of Clinton, on the first Tuesday of October next, to answer to said indictment, with one surety in like sum. Andrew J. Curtis recognized in the sum of $700 for his appearance at the next court of oyer and terminer, to be held in and for the county of Clinton, on the second Tuesday of October next, to answer and stand trial upon an indictment against him for aiding prisoners to escape from and break Clinton prison. Almon D. Felton recognized in like sum as surety."

Curtis appeared at the October oyer and terminer, when another indictment was found against him for the same offense charged in the former indictment, and filed on the morning of the 10th of October ; a third indictment for the same offense was found and filed in the afternoon of the same day ; on the same day Curtis was arraigned on the last indictment, and pleaded not guilty. Thereupon, on motion of the district attorney, an order was entered in the minutes of the court as follows : "An indictment having been found against Andrew J. Curtis on the 6th day of June, 1860, and also an indictment having been found against Andrew J. Curtis on the 10th day of October, for aiding prisoners to escape from Clinton prison ; and another indictment having been found against said Andrew J. Curtis, subsequently to the finding of the two indictments above named, for the same

offense, ordered that the two first indictments found June 6, 1860, and October 10th, 1860, against Andrew J. Curtis, be quashed." After the entry of the foregoing order, the said Curtis departed the court without its express permission.

Prior to the arraignment of Curtis on the last indictment a bench warrant had been issued on it, and placed in the hands of the sheriff; but there was no sufficient proof of any arrest under it, and therefore the court refused to submit the question of arrest to the jury.

On the 11th of October, the following order was entered in the cause, by direction of the court : " On motion of the district attorney, ordered that the recognizance of Andrew J. Curtis and Almon D. Felton, entered June 6, 1860, upon the minutes of the court as kept by the clerk thereof, be written out in full and attached to said minutes as of the time when such recognizance was taken, and that the minutes and entry of such recognizance by the clerk be so corrected as to conform to the recognizance as taken, and as of the time when such recognizance was taken." And thereupon, on motion of the district attorney, an order was made and entered as follows, to wit : "Andrew J. Curtis having been called upon his recognizance to come forth and answer to his name, and he failing to appear and make answer, on motion of H. S. Johnson, district attorney, ordered that his, Andrew J. Curtis', recognizance be estreated, and district attorney directed to prosecute the same." The clerk, pursuant to the order above set forth, drew out the following from his minutes as the recognizance entered into on the 6th of June, 1860, to wit : " You and each of you acknowledge yourselves to be indebted to the people of the state of New York, to wit : You, Andrew J. Curtis, in the sum of $700 ; and you, Almon D. Felton, in the sum of $700, to be levied of your and each of your goods and chattels, lands and tenements, to the use of the said people, if default shall be made in the condition following, to wit : The condition of this recognizance is such, that if Andrew J. Curtis shall appear at

the next court of oyer and terminer, to be held in and for the county of Clinton, on the 2d Tuesday of October next, from day to day during the sitting of the said court, then and there to answer and stand trial upon a certain indictment against him for aiding prisoners to escape from and break Clinton prison, not to depart the court without leave, and to abide its order and decision, then this recognizance to be void, otherwise to remain in full force and virtue. Are you and each of you content? To which they answer, aye." This recognizance, as drawn out, was on a separate piece of paper, and was on the 11th of October attached to the minutes kept by the clerk at the June oyer and terminer, and also to the book of records, by being pasted therein.

At the close of the proofs each party asked judgment. The court ordered judgment for the plaintiff.

*H. S. Johnson,* for the plaintiff.

*G. M. & G. H. Beckwith,* for the defendants.

JAMES, J. The defendant claims that the judgment below should be reversed, for the following reasons: 1st. Because the entry in the minutes of the court, on the 6th of June, 1860, did not amount to a recognizance; and therefore the defendant had not entered into any obligation. 2d. If the recognizance, as drawn out and entered on the 11th of October, is relied upon, it is void. The court had no power nor jurisdiction of the person of the defendant, which warranted the entry of such order; and such recognizance so entered, particularly after the indictment was quashed, was wholly unauthorized and void. 3d. If there was a valid recognizance taken on the 6th of June, when the indictment on which it was founded was quashed, the recognizance ceased and became void. 4th. That Curtis was arrested under the third indictment and taken out of the custody of the bail, whereby the bail was released.

The People v. Felton.

A recognizance is defined by *Bouvier* to be an obligation of record, entered into before a court or officer, duly authorized for that purpose, with a condition to do some act required by law, which is therein specified. Our revised statutes declare that "all recognizances required or authorized to be taken in any criminal proceeding in open court by any court of record, shall be entered in the minutes of the court, and the substance thereof shall be read to the person recognized. All other recognizances, &c. shall be in writing, and subscribed by the party to be charged," &c. (2 *R. S.* 746.)

The recognizance on which this action was brought was taken in open court, and the most that can be said for the entry in the minutes from which it was drawn up is, that it properly entitled the cause, stated the penalty, the court before which the accused was to appear, together with the time and place, the indictment and the offense ; but it did not contain any acknowledgment of indebtedness to the people of the state. In this particular the case is within the construction given to similar entries in the cases of *The People* v. *Rundle*, (6 *Hill*, 506,) and *The People* v. *Graham*, (1 *Parker's Cr. R.* 141.) In the first case the court say, "the entry produced does not amount to a recognizance ; there is no acknowledgment of indebtedness to the people of the state." In the second case the court said, "all the substantial parts of the recognizance—such as the acknowledgment of indebtness, the *indictment*, the offense charged, the condition, &c.—should have been entered in the minutes of the court." Clearly then, unless the recognizance, when drawn up in form, can go beyond the entries in the minutes of the court, no legal obligation was entered into by the defendant on the 6th of June. The requirements of the statute were not complied with at that time, and the entry in the minutes did not amount to a recognizance.

The most important question is, had the court authority and jurisdiction to direct the entry of the order, made on the

11th of October, setting out a full and complete recognizance against the accused and his surety.

That the court has power to correct clerical errors, or to amend its records on proper notice to the parties interested, is not disputed. But the order and entry in this case cannot be regarded as an amendment. If binding, it imposes new obligations upon the accused and his surety. It declares they acknowledged themselves indebted to the people of the state, which is not true; and unless it was true, the oyer and terminer could not, by any ex parte proceeding, impose that obligation upon them, even though it were the intention of the recognitors to have assumed such obligation and they supposed they had. (*Ontario Bank* v. *Mumford*, 2 *Barb. Ch. Rep.* 613.)

The attention of the court, in this connection, was particularly called to the remark of Justice Bronson at the close of the opinion in the case of *The People* v. *Rundle*, (*supra*,) when, after disposing of the case, he said : " If it (the recognizance) was not utterly void, it was at the most only a memorandum from which the record of a recognizance might have been drawn up." By reference to the case, it will be seen a recovery was sought upon the minutes of the court, without producing a record properly made up. The court first held that the entry did not amount to a recognizance, and pointed out its defects, and then said, " if not utterly void, it was at most only a memorandum from which a record might have been drawn up ;" not intending to intimate that such entry might be the foundation of a legal record, but only that a perfect and valid entry was but a memorandum from which a record might be made, and from which one should be made before a recovery could be had by action.

It was further urged that this record could not be impeached collaterally ; that it imported absolute verity. The difficulty in the case is that the defect appeared in the records of the court ; in the minutes which were the foundation of the recognizance on which the plaintiffs sought to recover.

The People *v.* Felton.

But conceding the entry in the minutes to have been suffi-
cient, and the recognizance legal and binding, when the in-
dictment specified in the recognizance was quashed, the
obligation was discharged and the surety released.

The condition of the undertaking was that the accused
should appear at a time and place specified, to answer an in-
dictment therein stated; and when the accused appeared in
fulfillment of that undertaking, and that indictment was
quashed in open court in his presence, on motion of the dis-
trict attorney, it was a discharge of the recognizance, and a
permission for the prisoner to depart. An acquittal of such
indictment, on trial, would most certainly operate as a dis-
charge of the recognizance, and no special leave for the pris-
oner to depart would need be asked of the court, in order to
release the surety from his obligation; and this would be so
even though the undertaking, as in this case, contained the
clause that the accused should not depart the court without
leave, &c.

In a recognizance to answer an indictment, that clause has
no force, beyond answering the particular charge named;
(*The People* v. *Stager,* 10 *Wend.* 434;) while in a matter be-
fore indictment it has force, and is important, to detain the
accused until the court shall know what charges are to be
brought against him, and in order that the prosecuting officer
may have the same control over him, for all offenses brought
against him, as the prosecutor would, had the accused remain-
ed in the custody of the sheriff. In the one case the recogni-
zance is to answer a particular charge; in the other it is to
answer what may be alleged against him before the grand
jury. In this case the grand jury had investigated the com-
plaint, presented their finding in the form of an indictment,
the prisoner had been arraigned, the charges read to him and
he pleaded thereto; thus forming an issue which was placed
upon the record for the court to try; and a recognizance that
the "prisoner should appear and stand trial upon that indict-
ment, and not depart the court without leave, but abide its

order and decision," was satisfied by an appearance and discharge of the indictment ; and cannot be converted into an obligation that the accused should remain to see if any other indictment was to be found, unless formally discharged by the court. The surety at least assumed no such responsibility ; as to him the obligation was single in its purpose, and fully satisfied when the indictment was discharged.

This construction will not conflict with the cases of *The People* v. *Stager*, (10 *Wend.* 434,) and *Champlain* v. *The People*, (2 *Com.* 82,) nor with what, in the former case, was approved from Hawkins' Pleas of the Crown. In both cases the question arose upon a recognizance to answer charges to be preferred, and not upon indictment. So in the case quoted from Hawkins. The cases from this state both arose upon demurrer ; the first to the pleas and the latter to the declaration. In the first, the plea of rearrest was held good ; while a plea that the prisoner appeared at the time and place, and was ready to answer, was held bad. In the second case the declaration was held bad, because it did not contain an averment that an indictment was found at the sitting of the court at which the accused was bound to appear. In the citation from Hawkins, it is true the liability is put upon the express ground that the recognizance contained the clause that the accused should not depart until he had been discharged by the court ; but, as I have previously said, that was a recognizance to answer an information, not an indictment ; although an information at that time did not differ from an indictment, in form and substance, except that it was filed at the discretion of the law officer, without the intervention or approval of a grand jury. Still, in such case, no arraignment had been made, no plea to the charge had, no issue formed ; the recognizance was in character precisely what such an obligation now is when a person has been held over by an examining magistrate to answer a charge to be preferred.

It is a sufficient answer to the point, that the undertaking was discharged by the rearrest of the accused on the subse-

The People *v.* Felton.

quent indictment, to say that no such arrest was proved. The testimony on that branch of the case, instead of proving an arrest, proved the reverse, and hence the court was right in refusing to submit that question to the jury.

From these premises my conclusions are:

First. That the entry in the minutes of the court was defective in not stating the acknowledgment of indebtedness, and therefore no legal recognizance was entered into by the defendant.

Second. That the entry in the minutes of the court being defective, there was no memorandum from which to make up a recognizance, and hence there was nothing on which to base the action.

Third. That the court had not authority, ex parte, to manufacture an undertaking imposing obligations upon the accused and his surety never assumed by them.

Fourth. That quashing the indictment which the accused had given bail to appear and answer, upon the motion of the prosecuting officer and in the presence of the accused, while there to answer, was a discharge of the obligation, released the surety and authorized the prisoner's departure from court without any special permission or order therefrom.

The judgment should be reversed, and a new trial granted; costs to abide the event.

ROSEKRANS, J. and POTTER, J. concurred.

BOCKES, J. dissented.

Judgment reversed.

[WARREN GENERAL TERM, July 10, 1860. *Rosekrans, Potter, Bockes* and *James*, Justices.]