State use of Independence County v. Glenn, et al.

---

STATE USE OF INDEPENDENCE COUNTY VS. GLENN ET AL.

BAIL:    *What discharges.*

Whatever judicial act in a case deprives a defendant's bail of the right to arrest and surrender him, discharges the bail; and so where an indictment is quashed upon demurrer and the defendant discharged, the bond is discharged, and a reversal of the judgment by the Supreme Court does not revive it.

APPEAL from *Independence* Circuit Court.

Hon. R. H. POWELL Circuit Judge.

*H. S. Coleman* for Appellant.

The reversal of a judgment restores the parties to the same condition in which they were prior to its rendition. *Freeman on Judgments, sec.* 481; *Harrison v. Trader and wife,* 29 *Ark.,* 97-8.

On appeal by the State, the *effect* of the judgment was suspended, and neither defendant nor his bail could profit by its provisions.    29 *Ark.,* 97-8.    The liability of the bail could only cease upon a *final* discharge of defendant.

When the judgment quashing the indictment was reversed, the *whole* judgment was reversed and held for naught, and could not be pleaded in bar.

Bail. What discharges.    SMITH, J.    One Watts being under indictment for slander, the appellees entered into a bail-bond, conditioned

that he should appear in Independence Circuit Court at its next term to answer said charge and at all times render himself amenable to the orders and process of said Court in said prosecution, and if convicted should render himself in execution thereof. At the following term Watts appeared and demurred to the indictment. The Court sustained the demurrer, quashed the indictment, discharged Watts and exonerated his bail. The State appealed to this Court, where the judgment was reversed and the cause remanded with directions to require Watts to plead to the indictment.

At the next term after the filing of the mandate, Watts made default, his bond was adjudged to be forfeited and a *scire facias* was issued against his sureties. Their plea is, that by the judgment and consideration of the Circuit Court, they were discharged from further liability upon said bond. And the question is whether, when bail have been once exonerated by a final judgment in favor of the defendant, a subsequent reversal for error revives their liability.

In *State v. Mathis*, 3 *Ark.*, 84, it is said by DICKENSON, J., *arguendo*, that, if the indictment be quashed, the recognizance becomes ineffectual.

In *Gentry v. State*, 22 *Ark.*, 544, it was ruled that a recognizance to appear at the next term of Court and not to depart thence without leave, binds the conusor to appear not only at that time, but at each succeeding term, until acquitted, or otherwise legally discharged; or if found guilty, until sentence is passed on him—unless he is permitted to depart sooner by leave of the Court.

In *Harrison v. Trader*, 29 *Ark.*, 85, an attachment had been levied upon lands, but the defendants obtained a judgment in the Court of first instance. A writ of error was prosecuted without supersedeas and the judgment

State use of Independence County v. Glenn, et al.

was reversed. When the mandate was filed below, the Circuit. Court rendered a personal judgment against the defendants, but refused to order a special execution against the property attached. And this Court held, that as between the parties the lien springing from suing out the attachment was preserved.

These are all the cases in our own reports which we have been able to find, bearing directly or remotely up‑ on this point.

*Butler v. Bissell*, 1 *Root*, (*Conn.*) 102, is an exact counterpart of this case, except that it was *scire facias* on special bail given in a civil action. The bondsman pleaded in bar the first judgment in favor of the defendant. The plaintiff replied, *nul tiel record*, that judgment having been reversed on error. To this reply the defendant demurred, and the reply was held insufficient upon the ground that the bail was exonerated by the first judgment, notwithstanding it had been reversed for error.

*Lyons v. State*, 1 *Blackf.*, 309, was *scire facias* on a recognizance, the condition of which was that the principal should appear in a certain court and answer to a charge of larceny, and not depart without leave. And a plea that the principal had appeared and pleaded not guilty; that the Court, having heard the evidence and dismissed the jury, had discharged him; and that afterwards he had been called and the recognizance declared forfeited, was held good.

In *People v. Felton*, 36 *Barb.*, 429, it was ruled that quashing the indictment which the accused had given bail to appear to and answer, was a discharge of the obligation, released the surety and authorized the prisoner's departure from court without special leave.

The case of *United States v. White*, 5 *Cranch, C. C. Rep.*, 369, announced the safer rule that if the recognizance is

conditioned to appear to answer to a certain indictment and not to depart without leave of the Court, it is not discharged by the quashing of that indictment, but remains in force until the defendant has leave from the Court to depart; and if a new indictment be found, he and his bail are bound for his appearance to answer such new indictment.

*People v. Green,* 5 *Hill,* 647, was an action on a bastardy bond, conditioned that the putative father should appear at the next court' of general sessions, and not depart the said court without leave. The accused appeared and answered at the time specified; and on motion of his counsel, without the knowledge or consent of his sureties, the hearing of the matter was postponed and the principal in the bond was suffered to depart. At the next term a default was taken, but it was adjudged that the recognizance had been satisfied.

The test of the continuing obligation of the bail is this: After the entry of the order quashing the indictment and dismissing Watts without day, had his bail the right to re-arrest him and surrender him into the custody of the law? For bail hold their principal always in a string, and may at any time exonorate themselves by giving him up. And whatever deprives them of the right to surrender him discharges them. Now it is plain to our minds that, after the final judgment in the Circuit Court, his sureties had no further control over the person of Watts. And the reversal of that judgment did not revive their right to arrest him, nor, consequently, their obligation to produce him in court.

Judgment affirmed.